UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IAN TOROK,<br>    Plaintiff,<br><br>v.<br><br>ROCKY MOUNTAIN CAPITAL MANAGEMENT, LLC, JOHN DOE CORPORATIONS 1–5, and JOHN DOES 1–10,<br>    Defendants. | Case No. 1:21-cv-24<br><br>**JURY DEMAND** |

## COMPLAINT

Now comes IAN TOROK ("Plaintiff,") complaining as to the conduct of ROCKY MOUNTAIN CAPITAL MANAGEMENT, LLC ("RMCM"), JOHN DOE CORPORATIONS 1–5 ("Doe Corporations"), and JOHN DOES 1–20 ("Does") (collectively "Defendants").

### NATURE OF THE ACTION

1. Plaintiff brings this action pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692 *et seq.*, the Ohio Consumer Sales Practices Act ("CSPA") under Ohio Rev. Code Ann. § 1345 *et seq.*, and Ohio common law.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper pursuant to 28 U.S.C. § 1391 as Plaintiff resides in this District and the harms giving rise to this action occurred primarily in this District.

[ 1 ]

## PARTIES

4. Plaintiff is a natural person residing in Hamilton County, Ohio.

5. RMCM is a limited liability company with its principal place of business in North Tonawanda, New York.

6. RMCM is a third-party debt collector that regularly collects upon consumer debts purportedly owed by consumers in Ohio.

7. RMCM often "outsources" the collection of debts it purportedly owns to other third-party debt collectors in the Buffalo, NY metropolitan region, while retaining, on information and belief, ownership of the debts and control of the collection process.

8. Doe Corporations 1–5 are those business entities, if any, that acted as RMCM's agents in placing and answering the calls at issue in this case or in further subcontracting placement and answering of said calls to one or more other Doe Corporations further downstream.

9. On information and belief, Doe Corporations 1–5 are, if existing, third-party debt collectors that regularly collect upon consumer debts purportedly owed by consumers in Ohio.

10. Does 1–20 are the owners, officers, and individual collection agents of RMCM and, if existing, Doe Corporations 1–5, who planned, oversaw, and placed or answered each call at issue in this case.

## FACTS SUPPORTING CAUSES OF ACTION

11. At some point in 2017 or 2018, Plaintiff allegedly took out a payday loan for personal (not business) purposes from Plain Green, LLC.

12. After the alleged debt went into default, Plain Green, LLC sold the alleged debt to RMCM.

13. On or before November 19, 2020, RMCM and/or one or more Doe Corporations acting on its behalf, began placing calls to Plaintiff and Plaintiff's family.

14. To the extent that these calls were placed by one or more Doe Corporations, RMCM and its owners and officers were, on information and belief, aware of the scripts and other collection tactics used by the Doe Corporations and their owners, officers, and agents in their collection activities, including those employed in this case, and RMCM contracted with the Doe Corporations with the intent that the Doe Corporations act as its agents in employing such strategies with respect to Plaintiff's purported debt.

15. These calls were placed using a technique commonly known as "spoofing," which made it appear as if the calls originated from numbers other than their true originating number, thereby intentionally concealing the origin of the calls.

16. Because RMCM and/or the Doe Corporations never placed two calls from the same apparent number, and because RMCM and/or the Doe Corporations did not leave any messages prior to November 19, 2020, Plaintiff cannot state how many calls were placed by RMCM and/or the Doe Corporations prior to that date.

17. On November 19, 2020, RMCM and/or one or more Doe Corporations acting on its behalf placed at least three calls in an attempt to collect on Plaintiff's purported debt.

18. First, at 10:23 A.M., Plaintiff's stepmother Diane Torok, received a call

from a spoofed number that she did not answer. That call resulted in a voicemail from RMCM or a Doe Corporation acting on its behalf stating:

> Diane, my name is Anabelle Porter. I'm contacting you regarding a case that's in the process of being filed through Butler County. The case is not being filed against you. It is actually being filed against Ian Torok. I've been instructed to make you aware that your name and number have been listed as a relative or an associate of Ian's, and it appears that your address is also listed as a likely location for him. At this point, Mr. Torok still has the legal right to contact the Proceedings Office filing the case to update his information. However, once the case is filed, that will just no longer be an option. The phone number provided for their office is 855-334-8508. When he calls he will also need to provide case number 109590. This is considered a legal notification by telephone, and Mr. Ian Torok will be located at his place of employment or through third party relatives such as yourself unless I am instructed otherwise.

19. Nearly every statement made in this voicemail was materially false:

   a. On information and belief, the caller's name was not Annabelle Porter. Given the later refusal of the calling entity to identify itself beyond the name "Capital," it is exceedingly unlikely that its individual agents provide their true names during calls;

   b. On information and belief, no case was ever intended to be filed against Plaintiff in Butler County. On reference and belief, RMCM, which owns the debt, has never filed a collections suit in any of Ohio's three most populous counties, nor has it filed one in Butler County;

   c. On information and belief, there is no "Proceedings Office" at RMCM or the relevant Doe Corporation responsible for handling legal matters;

   d. There is, obviously, no reason that it would be impossible to update contact information relating to Plaintiff's relatives after the initiation of

[ 4 ]

       any contemplated suit; and

    e. On information and belief, there was never any intent to "locate" Plaintiff at his place of employment or anywhere else.

20. Minutes later, at 11:09 A.M., Plaintiff's ex-wife, Elizabeth Mueller, received a call from a spoofed number that she did not answer. That call resulted in a voicemail from RMCM or a Doe Corporation acting on its behalf stating:

> Elizabeth, my name is Anabelle Porter. I'm contacting you regarding a case that's in the process of being filed through Butler County. The case is not being filed against you. It is actually being filed against Ian Torok. I've been instructed to make you aware that your name and number have been listed as a relative or an associate of Ian's, and it appears that your address is also listed as a likely location for him. At this point, Mr. Torok still has the legal right to contact the Proceedings Office that is filing the case to update his information. However, once the case is filed, that's no longer gonna be an option. The phone number provided for that legal department is 855-334-8508. Now when he calls he will also need to provide his case number, which is 109590. This is considered a legal notification by telephone, and Mr. Ian Torok will be located at his place of employment or through third party relatives such as yourself unless I am instructed otherwise.

21. For the same reasons given in paragraph 20, *supra*, nearly every statement made in this voicemail was materially false.

22. Finally, at 11:13 A.M., Plaintiff received a call from a spoofed number that he did not answer. That call resulted in a voicemail from RMCM or a Doe Corporation acting on its behalf stating:

> Ian, my name is Anabelle Porter. I'm contacting you regarding your case that's in the process of being filed through Butler County. By law, Mr. Torok, I have to make you aware that once case number 109590 is filed, it becomes a matter of public record and there's an order for your location. Since I was unable to reach you by phone, Mr. Torok, I've been instructed to contact your employer and speak with your supervisor because it looks

like that is going to be your likely place of location. Mr. Torok you have the legal right to contact the proceedings office that is processing your case. However, you have to speak with them before your case is filed. Once your case has been discharged from their office, all of your legal rights will be forfeited. The number provided for their office is 855-334-8508. It also states here that you will need to speak with their legal department. Ian Torok, you are being legally notified by telephone, and unless I'm instructed otherwise you will be located at your place of employment or through third-party relatives.

23. Nearly every statement made in this voicemail was materially false:

   a. On information and belief, the caller's name was not Annabelle Porter. Given the later refusal of the calling entity to identify itself beyond the name "Capital," it is exceedingly unlikely that its individual agents provide their true names during calls;

   b. On information and belief, no case was ever intended to be filed against Plaintiff in Butler County. On reference and belief, RMCM, which owns the debt, has never filed a collections case in any of Ohio's three most populous counties, nor has it filed one in Butler County;

   c. There is no legal requirement that a party to a contemplated lawsuit be informed by telephone that the lawsuit will be a matter of public record;

   d. There is no possible reason that "all of [Plaintiff's] legal rights w[ould] be forfeited" upon the filing of a case;

   e. On information and belief, neither RMCM nor any Doe Corporation has a "legal department" to which Plaintiff could have spoken; and

   f. On information and belief, there was never any intent to "locate"

[ 6 ]

Plaintiff at his place of employment or anywhere else.

24. On November 19, 2020, having received the voicemail directed to him by RMCM or its agent and having been informed of the voicemail received by his ex-wife, Plaintiff reached out to the number provided in the voicemail messages.

25. On that call Plaintiff asked the individual who answered to explain what was going on. He was informed of the following:

   a. A "judgment against [Plaintiff's] social security number" was being filed against him in Butler County relating to a delinquent loan he had taken out with Plain Green, LLC;

   b. That the "judgment" was for "fraud on a financial institution" and "breach of contract";

   c. That the "fraud on a financial institution" judgment was criminal in nature;

   d. That a "locator" had been assigned to his case and would be serving him with court documents relating to the case;

   e. That he would soon be given a court date, and that he would be required to have the entire amount of the judgment ready to pay on the court date;

   f. That the amount of the underlying debt was $3,104.44, but that he would be required to pay a total of $6,300 as a result of unspecified additional costs;

   g. That the name of the entity calling him was "Capital," which was a

[ 7 ]

      "proceedings company"; and

    **h.** That the representative with whom he spoke could not give him a timeline for the case to be filed because his case file was "locked";

    **i.** That retaining an attorney, as Plaintiff stated he intended to do, would not help Plaintiff.

26. A few days later, Plaintiff called the number again and asked if he could conference in undersigned counsel, whom he informed the representative was his attorney for this matter.

27. After receiving permission, Plaintiff conferenced in undersigned counsel. When undersigned counsel began speaking, the line went dead.

28. Plaintiff called the number two more times, each time asking that the entity that had called him identify itself.

29. The entity refused to provide him with any identifying information other than the name "Capital," and a P.O. Box in Roseville, California.

30. To date, Plaintiff has received no written communications from RMCM or any Doe Corporation, regarding the subject purported debt or any other topic. Specifically, Plaintiff has not received the notice of his rights under the FDCPA commonly known as a "1692g notice."

31. Plaintiff was able to identify RMCM as the architect of the above-described scheme only through its listing as the purchaser of the underlying debt.

32. Plaintiff suffered harassment, annoyance, embarrassment, and emotional distress as a result of Defendants' communications, especially those directed to his

[ 8 ]

relatives.

33. This action follows.

### COUNT I — VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

34. Plaintiff realleges the paragraphs above as though fully set forth herein.

35. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) of the FDCPA.

36. Defendants are "debt collector[s]" as defined by § 1692a(6) of the FDCPA because the principal purposes of their businesses are the collection of debts, and because they use the instrumentalities of interstate commerce to do so.

37. In the alternative, Defendants are "debt collector[s]" under § 1692(a)(6) because they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

38. The subject debt is a "debt" as defined by FDCPA § 1692a(5) because the debt owed or due or asserted to be owed or due to another arises out of a transaction for personal, family, or household purposes, being in this case a payday loan debt.

39. Through the actions described above, Defendants violated the following sections of the FDCPA:

   a. Informing Plaintiff's relatives that he owed a debt, in violation of § 1692b(2);

   b. Leaving a voicemail for Plaintiff without including a meaningful disclosure of the caller's identity, in violation of § 1692d(6);

   c. Falsely stating that Plaintiff had committed criminal fraud, in violation of § 1692e(7);

  d. Falsely implying that one or more Defendants would pursue legal action against Plaintiff when, on information and belief, they lacked the intent to do so, in violation of § 1692e(5);

  e. Falsely threatening to send a "locator" to visit Plaintiff and Plaintiff's relatives, without the intent to do so, I violation of § 1692e(5);

  f. Falsely stating that receiving the voicemail from Defendants meant that Plaintiff had been "legally notified" of the impending suit, in violation of § 1692e(13);

  g. Falsely giving the name "Capital," without more, as the business name of the calling entity, in violation of § 1692e(14);

  h. Engaging in all of the above misrepresentations, as well as the additional misrepresentations detailed in the preceding section, in violation of § 1692e(10) and § 1692e, generally;

  i. Failing to provide Plaintiff with the notice required under § 1692g(a).

40.  RMCM is liable for these violations either directly, as the entity that placed and answered the calls at issue, or under agency theory, as an admitted debt collector that contracted out the collection of the underlying purported debt to another debt collector or debt collectors that in turn placed and answered the calls at issue.

41.  RMCM is further liable for these violations as a member of a civil conspiracy including RMCM, Doe Corporations 1–5, and Does 1–20, the intent of which was to violate the FDCPA while avoiding the penalties available thereunder by rendering location of the offending party nigh-impossible.

42. Each of Doe Corporations 1–5 is liable for these violations either directly, as the entity that placed and answered the calls at issue, or under agency theory, as a debt collector that contracted out the collection of the underlying purported debt to another debt collector or debt collectors that in turn placed and answered the calls at issue.

43. Doe Corporations 1–5 are further liable for these violations as members of a civil conspiracy including RMCM, Doe Corporations 1–5, and Does 1–20, the intent of which was to violate the FDCPA while avoiding the penalties available thereunder by rendering location of the offending party nigh-impossible.

44. Does 1–20 are liable for these violations directly, as the individuals that placed and/or answered the calls at issue, or under agency theory, as the individuals who planned or oversaw the collections process.

45. Does 1–20 are further liable for these violations as members of a civil conspiracy including RMCM, Doe Corporations 1–5, and Does 1–20, the intent of which was to violate the FDCPA while avoiding the penalties available thereunder by rendering location of the offending party nigh-impossible.

### COUNT II – VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT

46. Plaintiff realleges the paragraphs above as though fully set forth herein.

47. The CSPA, pursuant to R.C. 1345.02(A), states that "[n]o supplier shall commit an unfair or deceptive practice in connection with a consumer transaction."

48. Plaintiff is a "person" as defined by R.C. 1345.01(B).

49. Defendants are "supplier[s]" as defined by R.C. 1345.01(C). *Taylor v. First Resolution Invest. Corp.*, 72 N.E.3d 573, 600 (Ohio 2016), *cert. denied sub nom. First Resolution Inv. Corp. v. Taylor-Jarvis*, 137 S. Ct. 398 (2016).

50. Debt collection is a "consumer transaction" as defined by R.C. 1345.01(A).

51. R.C. 1345.09(B) grants Plaintiff a private right of action against Defendants.

52. Defendants committed unfair or deceptive acts or practices in violation of the CSPA, R.C. 1345.02(A), when they engaged in acts and practices in violation of the FDCPA as set forth above.

53. Such acts and practices have been previously determined by Ohio courts to violate the CSPA, R.C. 1345.01 *et seq*. *See, e.g.*, *Kelly v. Montgomery Lynch & Assocs., Inc.*, No. 1:07-CV-919, 2008 WL 1775251, at *11 (N.D. Ohio Apr. 15, 2008) ("[A]ny violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice in violation of R.C. § 1345.02 and/or § 1345.03").

54. Defendant committed such actions after such decisions were available for public inspection pursuant to R.C. 1345.05(A)(3).

WHEREFORE, Plaintiff respectfully requests judgment as follows:

    a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

    b. Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. § 1692k(a)(2)(A);

c.  Awarding Plaintiff actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1692k(a)(1);

d.  Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k(a)(3);

e.  Awarding Plaintiff statutory, actual, punitive, and treble damages pursuant to the CSPA, plus reasonable attorney fees to include a fee multiplier;

f.  Awarding Plaintiff injunctive relief pursuant to the CSPA forbidding Defendant from continuing its illegal practices against her;

g.  Awarding Plaintiff the costs of this action and any other appropriate relief.

**A TRIAL BY JURY IS DEMANDED.**

Dated:  January 11, 2021

By:  s/ Geoffrey Parker

Geoffrey Parker (0096049)
HILTON PARKER LLC
10400 Blacklick-Eastern Rd NW, Suite 110
Pickerington, OH 43147
Tel: (614) 992-2277
Fax: (614) 427-5557
gparker@hiltonparker.com
*Attorney for Plaintiff*

[ 13 ]